UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| KENNETH SIMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 17-CV-1063 |
| ) | |
| C/O NICHOLAS SMITH, ) | |
| LT JOSEPH BENNETT, ) | |
| MAJOR SUSAN PRENTICE, ) | |
| and SABRINA FOX, ) | |
| ) | |
| Defendants. ) | |

## ORDER

**TOM SCHANZLE-HASKINS, U.S. Magistrate Judge.**

Plaintiff proceeds pro se from his incarceration in Pontiac Correctional Center on claims of excessive force against Defendant Correctional Officer Smith, failure to intervene against Defendants Major Prentice and Lieutenant Bennett, and deliberate indifference to a serious medical need against Defendant Nurse Fox. (3/21/17 Merit Review Order, d/e 7.) The parties have consented to the Magistrate Judge's exercise of jurisdiction, and the Defendants' motions for summary judgment are before the Court.

For the reasons explained more fully below, summary judgment is granted to Defendants Prentice and Bennett, who were not present when the alleged excessive force occurred.  Summary judgment is denied to Defendant Smith, the officer whom Plaintiff accuses of excessive force.  Summary judgment is also denied to Defendant Fox, who purportedly failed to adequately control the bleeding from Plaintiff's wound and did not address Plaintiff's complaints of pain.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed. R. Civ. P. 56(c)(B).  If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists.  Id.; Harvey v. Town of Merrillville, 649 F.3d 526, 529 (7th Cir. 2011).

At the summary judgment stage, the evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. Id. "'[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Shaffer v. American Medical Ass'n., 662 F.3d 439, 443 (7th Cir. 2011)(*quoting* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

**Facts**

On March 18, 2016, Plaintiff was housed in the east cellhouse at Pontiac Correctional Center with inmate Equilino Jaro. Defendant Major Prentice and Defendant Lieutenant Bennett were making their rounds when Plaintiff confronted Defendant Prentice, asking why he and his cellmate were slated to be moved to another cell. According to Plaintiff, Defendant Prentice and Plaintiff then "exchanged some unpleasant words[,]" cussing each other out. (Pl.'s Dec. ¶ 6, d/e 50-1; Pl.'s Dep. 15, d/e 40-4.) About ten minutes later, after Defendants Prentice and Bennett had left, three

correctional officers appeared to search Plaintiff's cell. One of those officers was Defendant Smith. The other two, Jibben and Spencer, are not named as defendants.

According to Plaintiff, Defendant Smith began searching Plaintiff's property while Officer Jibben secured Plaintiff outside the cell. Plaintiff was handcuffed behind his back. Plaintiff maintains that Defendant Smith was destroying Plaintiff's property, reading Plaintiff's legal mail, and "making lewd comments about [Plaintiff's] deceased mother." (Pl.'s Dec. ¶ 7; Pl.'s Dep. 57.) Plaintiff objected, hurling back lewd comments about Defendant Smith's mother and daughter. (Pl.'s Dep. 57.) According to Plaintiff, Defendant Smith then directed Officer Jibben to switch places with Defendant Smith. Defendant Smith took over holding Plaintiff's cuffs and began tightening the cuffs uncomfortably. (Pl.'s Dec. ¶ 8.) Plaintiff admits that he continued arguing and turned to look at Defendant Smith, apparently disobeying Defendant Smith's orders to turn back around, stating, "I ain't did nothing. Turn around for what?" (Pl.'s Dep. 69.) Plaintiff testified, "Before I knew it, I was like 'Fuck yo' mama' again and [Smith] was like boom, hit [me] against the bars," slamming Plaintiff's face up against metal bars or a metal balcony.

(Pl.'s Dep. 58.)  Plaintiff received a cut on his right eyebrow which Plaintiff describes as bleeding profusely, blood everywhere.  (Pl.'s Dep. 27; Pl.'s Dec. ¶ 9.)  Defendants Prentice and Bennett were called to the scene, whereupon Prentice applied pressure to the cut with a towel and had Defendant Nurse Fox summoned.  Plaintiff's cellmate at the time, Equilino Jara, confirms Plaintiff's description of the incident and injury.

    According to Defendant Fox, when she arrived at the scene, Fox observed a half-inch laceration to Plaintiff's right eyebrow, with the bleeding under control.  Fox cleaned the wound and applied two steristrips to close the wound.  According to Plaintiff, though, the wound had not stopped bleeding and continued to bleed after Fox left.  A few hours later Plaintiff got the attention of a different nurse (Nurse Jennifer Tinsley, not a Defendant), who provided treatment that did stop the bleeding:  additional cleaning of the wound, some kind of topical application to stop the bleeding, and two more steristrips to replace the strips that had fallen off due to the continued bleeding.  (Pl.'s Dep. 26, 30, 98.)  The Court does not see a medical record of a visit from Nurse Tinsley, but Defendant Fox does not seem to dispute that Tinsley's visit did occur.

About nine months prior to this incident, Plaintiff had received a corneal transplant in his right eye because Plaintiff has Keratoconus, a progressive eye disease. Plaintiff maintains that the injury he received on March 18, 2016 adversely affected his corneal transplant, but he points to no admissible evidence to support that assertion. The medical record from Plaintiff's follow-up visit with the University of Illinois Cornea Clinic on March 23, 2016, five days after the incident, states that Plaintiff reported doing well. Plaintiff testified in his deposition that someone at the Cornea Clinic told Plaintiff that the injury had caused a setback, but that is hearsay and cannot be considered as evidence that the injury actually did cause a setback. (Pl.'s Dep. 35-36.)

Defendant Smith wrote Plaintiff a disciplinary report based on the incident, charging Plaintiff with attempted assault. (3/18/16 disciplinary report, d/e 51 p. 5.) Plaintiff maintains that the guilty finding on this charge was eventually reversed on appeal, and the charge was reduced. (Pl.'s Dep. 28-29.)

## Analysis

**I.   Excessive Force Claim against Defendant Smith**

Force against a prisoner violates the Eighth Amendment to the U.S. Constitution if that force is used to "maliciously and sadistically [] cause harm" rather than "in a good-faith effort to maintain or restore discipline." Hudson v. McMillian, 503 U.S. 1, 6–7 (1992).

Defendant Smith avers that he was concerned for his own safety, using only the minimal force necessary to gain Plaintiff's compliance with Smith's order to face away from Smith. Smith avers that he "ordered Plaintiff to turn away from me because although Plaintiff was in handcuffs, [Plaintiff could] still spit or head butt me." (Smith Aff. ¶ 10, d/e 46-1.) That is why, according to Defendant Smith, he placed Plaintiff against the metal balcony, with Plaintiff's head facing away from Smith. Id. Smith does not address Plaintiff allegations about Smith's goading or switching places with Officer Jibben. Nor are there affidavits from the other officers present, Jibben and Spencer.

A jury could reasonably find in Defendant Smith's favor. Plaintiff admits to verbally sparring, turning to face Defendant Smith, and disobeying orders to turn back away from Defendant Smith. If the jury believes that Defendant Smith used only the force

reasonably necessary to compel that compliance, inadvertently causing injury, then Plaintiff's claim fails.

However, the amount of force used is disputed on this record. Plaintiff describes the force used as "slamming," while Defendant Smith describes the force as "placing." Additionally, Plaintiff's version supplies a possible motive for slamming: Plaintiff's verbal insults to Defendant Smith. On this record, the excessive force claim is for the jury to decide. Defendant Smith is not entitled to qualified immunity because his argument requires the Court to accept his version of the amount of force used over Plaintiff's version, which the Court cannot do at the summary judgment stage. Drawing inferences in Plaintiff's favor, a jury could reasonably find that Defendant Smith lost his temper and intentionally slammed Plaintiff's head in order to cause Plaintiff harm, not to restore order.

## II.     Failure to Intervene Claim against Defendants Prentice and Bennett

The claim against Defendants Prentice and Bennett is for the failure to intervene to prevent or stop Defendant Smith's excessive force. (3/21/17 Merit Review Order p. 2.) In order to be liable,

Defendants Prentice and Bennett must have had "a realistic opportunity to intervene and stop" the excessive force. Miller v. Gonzalez, 761 F.3d 822, 827 (7th Cir. 2014).

Defendants Prentice and Bennett do not submit affidavits, but Plaintiff does not dispute that Defendants Prentice and Bennett were not present when the alleged excessive force occurred. (Pl.'s Dep. 63-64.) Defendants Prentice and Bennett had gone to the gallery downstairs. (Pl.'s Dep. 63.) Defendants Prentice and Bennett cannot be liable for failing to intervene when they were not even on the scene. Moore v. City of Chicago, 209 F.Supp.3d 1016 (N.D. Ill. 2016)("Police officers who were not present on the scene cannot be held liable for failing to intervene in another officer's unconstitutional acts.").

Plaintiff asserts in his response that these Defendants condoned the excessive force by attempting to cover-up the excessive force. According to Plaintiff, the cover-up included telling Defendant Smith to write the disciplinary report for attempted assault and telling Defendant Fox either not to report her medical exam in the medical records at all or to omit in that record how Plaintiff had received the cut over his eye.

Attempts to cover-up excessive force would not support a failure to intervene claim. No matter what Defendants Prentice and Bennett did after the excessive force, the fact remains that neither was present when the excessive force occurred.

Attempts to cover-up a constitutional violation might make out an access to the court claim, but only if the cover-up prevents a plaintiff from learning information necessary to pursue his rights. This claim is not before the Court, but, even if it were, Defendants did not deprive Plaintiff of the information he needed to pursue a grievance or this lawsuit. Plaintiff personally experienced the excessive force and the injury and thus already had all the information he needed to begin pursuing a claim to vindicate his rights. *See* Rossi v. City of Chicago, 790 F.3d 729, 736 (7th Cir. 2015)(cover-up did not deny plaintiff of the ability to pursue legal redress because plaintiff already knew all the relevant facts); Powell v. City of Berwyn, 68 F.Supp.3d 929 (N.D. Ill. 2014)(alleged cover-up of constitutional violations was not independently actionable where plaintiff already had access to enough evidence to bring claim).

Plaintiff also alleges in his response that Defendants Prentice and Bennett knew that Defendant Smith had a reputation for misconduct and were listening to the verbal sparring from the gallery below yet failed to intervene to stop the situation from escalating.  Plaintiff offers no evidence to support these new allegations.  Further, Plaintiff admitted in his deposition that he has no evidence that Defendants Prentice or Bennett or anyone else knew that Defendant Smith intended to use excessive force.  (Pl.'s Dep. 79-81)("So don't nobody know what happened that time before it happened.").  Summary judgment is granted to Defendants Bennett and Prentice.

III.    **Deliberate Indifference Claim against Defendant Fox**

Deliberate indifference to a serious medical need violates an inmate's Eighth Amendment right to be free from cruel and unusual punishment.  <u>Townsend v. Cooper</u>, 759 F.3d 678, 689  (7th Cir. 2014).  Defendant Fox argues that Plaintiff's medical need was not serious, but Plaintiff describes blood everywhere, so much so that Defendant Prentice, a layperson, recognized the need to call for medical help.  Plaintiff's description allows a reasonable inference

that Plaintiff's injury was serious in the constitutional sense. King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012)(serious medical need includes a need so obvious that even a layperson would recognize the need for treatment).

The question is whether a jury could find that Defendant Fox was deliberately indifferent. Deliberate indifference is the conscious disregard of a substantial risk of harm. Townsend, 759 F.3d at 689. According to Defendant Fox, Plaintiff had a minor laceration which had stopped bleeding, and Plaintiff did not appear to be in distress. Fox says that she cleaned and treated the wound, with an otherwise unremarkable exam. In her opinion, Plaintiff did not need referral to a doctor or nurse practitioner. (Sims Aff. ¶ 4.)

Plaintiff agrees that Defendant Fox tried to stop the bleeding, but he maintains that the bleeding, though slowed, still continued. (Pl.'s Dep. 98.) He further argues that internal procedures required Defendant Fox to refer Plaintiff to the doctor immediately or at least to call the doctor or take Plaintiff to the health care unit, particularly in light of Plaintiff's corneal transplant. Plaintiff asserts that Defendant Prentice told Defendant Fox not to follow these procedures as part of the cover-up.

Drawing a reasonable inference of deliberate indifference against Defendant Fox on this record is difficult. Deviation from internal procedures does not alone give rise to a constitutional violation. Estate of Simpson v. Gorbett, 863 F.3d 740, 746 (7th Cir. 2017)("Section 1983 protects against 'constitutional violations, not violations of … departmental regulation and … practices[.]'")(quoted cited omitted). Plaintiff offers no evidence that referral to a doctor or the health care unit was actually necessary. Plaintiff does not explain what a doctor could have done that a nurse could not. Plaintiff also admits that he did not put in for sick call between the date of the incident and the date he went for his follow up appointment at the Cornea Clinic, which suggests that he did not believe that he needed further medical treatment after Nurse Tinsley's visit the night of the incident. (Pl.'s Dep. 42: "I don't put no sick call in. I know already I'm going to UIC, and UIC gonna call back and tell them woo-woo-woo.").[1]

    However, the Court cannot rule out an inference of deliberate indifference based on the Defendant Fox's alleged failure to control

---

[1] Plaintiff contends in his response that he was taking medicine that made him drowsy and tired on the day of Plaintiff's deposition, but Plaintiff's responses in the deposition were cogent and thorough, not suggestive of any disability.

Plaintiff's bleeding or to address Plaintiff's complaints of pain. Plaintiff contends that he was still bleeding when Defendant Fox left and had told Defendant Fox that he was in pain. He further states in his response that he was bleeding "profusely" when he sought Nurse Tinsley's help hours after Defendant Fox left. (d/e 41, p. 2, 10.) Defendant Fox's account differs. Defendant Fox maintains that Plaintiff's bleeding was under control and that he was in no apparent distress. Resolving these contradictory accounts is material to the deliberate indifference inquiry and a task for the jury, not the Court. Summary judgment is denied for Defendant Fox.

**IT IS ORDERED:**

1) The motion for summary judgment by Defendant Fox is denied. (d/e 40).

2) The motion for summary judgment by Defendants Bennett, Prentice, and Smith is granted in part and denied in part. (d/e 46.) Summary judgment is granted to Defendants Bennett and Prentice. Summary judgment is denied to Defendant Smith.

3)     A telephone conference is set for December 19, 2018 at 3:30 p.m. to discuss setting the final pretrial and trial dates.

4)     The clerk is directed to terminate Defendants Prentice and Bennett.

5)     The clerk is directed to issue a telephone writ to secure Plaintiff's presence at the telephone conference.

ENTER:   December 6, 2018

FOR THE COURT:    __**s/Tom Schanzle-Haskins**_____
                                TOM SCHANZLE-HASKINS
                                UNITED STATES MAGISTRATE JUDGE